UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NANCY MARTINEZ,

            Plaintiff,

            v.

ANDREW SAUL, COMMISSIONER,

            Defendant.

**Hon. Hugh B. Scott**

**6:18CV6354**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (plaintiff), 13 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 9 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 15, reassignment Order, July 9, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Nancy Martinez" or "plaintiff") filed an application for disability insurance benefits on January 20, 2015, for disability allegedly arising on June 1, 2006 [R. 11]. That application was denied initially. The plaintiff appeared before an Administrative Law

Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated April 25, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on March 12, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on May 9, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12, 13), and plaintiff duly replied (Docket No. 14). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 43-year-old (as of the January 2015 application date) with an eleventh-grade education, last worked as a CNA and previously as a baker helper (found to be heavy exertion work), cashier (light work), cook helper (medium work), laundry attendant, patient safety assistant, and personal attendant (light work) [R. 166, 31, 21]. The ALJ later found that, given plaintiff's impairments, she could not perform this past relevant work [R. 21].

Plaintiff contends that she was disabled as of the onset date of June 1, 2006 [R. 11]. Plaintiff asserts that she is unable to work due to anxiety and panic attacks [R. 16, 32-33] and also complains that her carpel tunnel syndrome affects her ability to lift (claiming she could not lift more than five pounds) [R. 17]. Plaintiff claims the following impairments deemed severe by the ALJ: carpel tunnel syndrome, obesity, post-traumatic stress disorder (or "PTSD"), depression, and anxiety [R. 13]. Plaintiff injured her wrists and has carpel tunnel syndrome due to a panic attack and fall in December 2015 [R. 17, 285, 343]. Plaintiff also claimed migraine headaches but those were treated with over-the-counter medication and the ALJ concluded that this ailment was not severe [R. 13].

2

**MEDICAL AND VOCATIONAL EVIDENCE**

As summarized by defendant (Docket No. 13, Def. Memo. at 3-4), the ALJ found at Step One (of the five-step analysis outlined below) that plaintiff had not engaged in substantial gainful activity since the January 2015 application date [R. 13]. At Steps Two and Three, the ALJ found that plaintiff's obesity, carpel tunnel syndrome, PTSD, depression and anxiety were severe impairments that did not meet or equal criteria for any of the relevant Listings [R. 13-16]. The ALJ did not discuss plaintiff's height or weight in acknowledging her obesity, but found that plaintiff had full range of motion despite her obesity [R. 17, 252, 347; cf. R. 252 (at Feb. 11, 2015, examination, plaintiff weighed 251 pounds and was 64 inches tall, with Body Mass Index equaling 43.08), 347 (Apr. 7, 2016, examination plaintiff weighed 270 pounds, Body Mass Index equaling 46.32))].

The ALJ found that plaintiff had a residual functional capacity to perform sedentary work with some restrictions [R. 16]. Plaintiff could never climb ladders, ropes or scaffolds; she could frequently handle objects (gross manipulation with dominant right hand) and frequent finger (fine manipulation) [R. 16]. Plaintiff may occasionally be exposed to moving mechanical parts, occasionally operate a motor vehicle; and occasionally be exposed to unprotected heights [R. 16], with these last conditions as recognition of plaintiff's claimed migraines [R. 13, 16]. The ALJ also noted that plaintiff could perform simple, routine, and repetitive tasks, but was to have no interaction with the public, and only occasional interaction with co-workers and supervisors [R. 16]. This assessment is based upon plaintiff's mild carpel tunnel syndrome and her obesity which limits her climbing but did not preclude other work activities [R. 20]. The ALJ found plaintiff had normal gait, strength, and tone [R. 20]. As for her mental limitations,

the ALJ restricted plaintiff to simple repetitive tasks and no interaction with public or coworkers [R. 20-21].

At Step Four, the ALJ found that plaintiff was unable to perform any of her past relevant work [R. 21]. At Step Five, the ALJ posed hypotheticals of this capacity, plaintiff's education and work experience and the inability to perform plaintiff's past work to the vocational expert. The vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as surveillance system monitor, table worker, or dowel inspector, all sedentary occupations [R. 22]. As a result, the ALJ held that plaintiff was not disabled [R. 22].

Plaintiff testified that she was unable to work due to panic attacks and, when she had such attacks, she stayed in her room with windows covered with blankets [R. 42, 16]. She also stated that if she had an attack at work, she would remove herself to avoid passing out to avoid being seen or jeopardizing others [R. 33-34]. Plaintiff testified that she did not cook or clean in her house, that her daughter did this as well as helps care for her nine-year-old brother (getting him up to go to school); plaintiff's nine-year-old also helps at home [R. 42-43]. The ALJ, however, found that her testimony differs from statements she made to providers that plaintiff cooked and cleaned her house [R. 16-17, 277, 278, 279; cf. R. 42-43]. Dr. Christine Ransom noted in her consultative evaluation that plaintiff said she is constantly cleaning [R. 278], while noting that she resided with her nineteen-year-old daughter and then eight-year-old son [R. 277] without stating who provided care to the younger child.

*Treating Opinions in Dispute*

Disputed here is the consideration of various treating sources' opinions about plaintiff's condition. Plaintiff argues that nine medical opinions in this case were not properly considered by the ALJ (Docket No. 12, Pl. Memo. at 18, 19-20). Below are the disputed opinions.

On January 21, 2015, Laura Hayton-Oeschle, LMSWR, performed intake of plaintiff and noted that that plaintiff had symptoms of depression and anxiety [R. 255] (Docket No. 12, Pl. Memo. at 12).

On January 26, 2015, Hayton-Oeschle completed a psychological assessment and found that plaintiff was unable to participate in any activities save treatment for three months [R. 403] (Docket No. 12, Pl. Memo. at 8). The ALJ noted that Hayton-Oeschle also found that plaintiff had normal functioning in following, understanding, and remembering simple instructions, remembering simple instructions, [R. 18, 403]. The ALJ discounted Hayton-Oeschle's opinion because she was not an acceptable medical source [R. 18-19].

On January 15, 2015, plaintiff saw NP Ellen Ingram and plaintiff stated that she was anxious following an assault [R. 262] (Docket No. 12, Pl. Memo. at 11). On that same date, Ingram completed a physical assessment of plaintiff [R. 395-98] (Docket No. 12, Pl. Memo. at 8). Ingram found that plaintiff could engage in activities for 20 hours per week, and can work at her own pace [R. 395] (id.). Ingram also noted that plaintiff had depression, anxiety, panic attacks, and worsening migraines and the examination plaintiff appeared depressed and anxious [R. 396, 397] (id.). Ingram concluded that plaintiff could walk for 2-4 hours, stand for 2-4 hours, sits for 2-4 hours, push, pull for 2-4 hours, and see, hear, and speak for more than 4 hours in an 8-hour workday [R. 398] (id.). Plaintiff argues that the ALJ did not address this opinion (Docket No. 14, Pl. Reply Memo. at 2; Docket No. 12, Pl. Memo. at 19).

On October 28, 2015, Ingram issued a psychological assessment for determining plaintiff's employment [R. 379], denying that she was a psychiatric provider [R. 419]. As the ALJ noted, Ingram found that plaintiff had normal functional limitations in maintaining basic

5

standards of hygiene and grooming, moderate limitations in every other functional area [R. 418-19, 19]. The ALJ gave this opinion little weight [R. 19].

On February 14, 2016, Ingram again examined plaintiff, treating her for right knee and right foot pain, severe insomnia, and racing thoughts [R. 385]. Ingram noted plaintiff was moderately limited and could only sit for 2-4 hours at a time [R. 385, 19]. The ALJ also gave little weight to this opinion [R. 19], noting that plaintiff retained normal gait, strength, and tome in her musculoskeletal system [R. 20]. In all, the ALJ gave Ingram's opinions little weight [R. 20]. Plaintiff now argues that the ALJ did not weigh the psychological assessment made by Ingram (Docket No. 12, Pl. Memo. at 19), despite Ingram's statements that she was not a psychiatric provider [R. 419, 19] but did conduct a psychological assessment on February 5, 2016 [R. 385].

On July 30, 2016, registered nurse Eric Jansen administered medication management for plaintiff [R. 442-45] (Docket No. 12, Pl. Memo. at 10). Plaintiff was diagnosed with major depression, social anxiety, PTSD, and agoraphobia [R. 444]. Jansen opined that plaintiff was moderately limited (unable to function 10-25% of the time) in her ability to maintain attention and concentration and regularly attend to a routine and maintain a schedule [R. 444] (Docket No. 12, Pl. Memo. at 10-11). Plaintiff was very limited in performing low stress and simple tasks and unable to participate in any activities other than treatment for 6 months [R. 444, 445]. Plaintiff argues the ALJ did not weigh this opinion (Docket No. 12, Pl. Memo. at 19; Docket No. 14, Pl. Reply Memo. at 2).

On September 28, 2016, Kay Loree, licensed mental social worker ("LMSW"), completed plaintiff's mental medical opinion statement [R. 471-75] (Docket No. 12, Pl. Memo. at 6). The ALJ rejected Loree's ultimate conclusion that plaintiff cannot work, assigning little

weight to this opinion [R. 20]. The ALJ concluded that Loree was not an acceptable medical source and her opinion was not supported by medical evidence [R. 20].

On October 6, 2016, Ingram again examined plaintiff and rendered a medical opinion statement [R. 477-81] (Docket No. 12, Pl. Memo. at 5). Ingram found that plaintiff would miss four days or more per month from work [R. 480, 20] and had decreasing grip strength, intermittent paresthesias and right knee pain with weight bearing [R. 477] (Docket No. 12, Pl. Memo. at 5). Ingram stated that plaintiff pain constantly interfered with her attention and concentration in the workplace and that plaintiff was unable to perform low stress jobs due to her depression and anxiety [R. 478, 20]. According to Ingram, plaintiff could sit for one hour and stand for thirty minutes, sit/stand/walk for less than two hours, that she needs a job that requires shifting position at will; that plaintiff could never twist, crouch, stoop, climb ladders or stairs; that plaintiff could lift less than 10 pounds occasionally, but never carry more than 10 pounds [R. 478-79, 480, 479, 20]. Plaintiff also has significant limitations in reaching, handling, and fingering [R. 480, 20]. The ALJ gave little weight to this opinion, first, because Ingram as a nurse was deemed not to be an acceptable medical source, second, the lack of support in the record for the limitations, and finally, plaintiff's ability to care for her nine-year-old son [R. 20].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.   General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

8

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

II. Pre-March 2017 Treating Physician Rule

Plaintiff's claims predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. § 404.1527 (2017); see also 20 C.F.R. § 416.927, such as this one. The current version of the SSA regulations

eliminates the treating physician's rule, but for applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claim filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.) (emphasis added).

Under 20 C.F.R. § 416.927(f)(1) for consideration of medical opinion for pre-March 2017 claims,

> "Consideration. Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case. Depending on the particular facts in a case, and after applying the factors for weighing opinion

10

> evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole."

20 C.F.R. § 416.927(f).

These factors include the examining relationship, the treatment relationship, whether the opinions are supported by medical signs and laboratory findings, consistency with the record as a whole, specialization, and other factors, id., § 416.927(c)(1)-(6).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the ALJ ignored three medical opinions from treating sources and rejected or did not comment on six other opinions (Docket No. 12, Pl. Memo. at 1, 18, 19-22). She contends that the residual functional capacity assessment was not based upon any medical opinion (id. at 1, 18, 22-25). The parties dispute the degree of consideration the ALJ needed to provide for not acceptable medical sources. Defendant argues that the ALJ correctly discounted nurse Jansen and nurse practitioner Ingram as not providing "medical opinions" (Docket No. 13, Def. Memo. at 4-5), 20 C.F.R. §§ 416.927(a)(1), 416.913(d)(1), 416.902.

I.  Treating Source Opinions

While defendant is correct that under the applicable treating source regulations, nurse, social workers, and nurse practitioners are not acceptable medical sources, they did constitute "not acceptable medical sources" whose opinions need to be weighed under the same factors as

for medical opinions under 20 C.F.R. § 416.927(c)(1)-(6). The ALJ here rejected Jansen's and Ingram's opinions out of hand (as well as social workers' opinions [R. 18-19]) merely because they were not so-called acceptable medical sources. Despite not being from acceptable medical sources, the ALJ needed to evaluate these treating sources under § 416.927(f). Ingram had longevity in treating plaintiff, but the ALJ did not factor that in in considering Ingram's opinions. Instead, the ALJ relied upon the finding (without citation) that plaintiff had normal gait, strength, tone to discount Ingram's contrary opinions [R. 20]. There were insufficient grounds for rejecting these opinions. Plaintiff's motion (Docket No. 12) for judgment on the pleading is **granted** on this ground.

II.     Physical Assessment in Residual Functional Capacity

The ALJ, in disregarding Ingram's opinions, contends that the record supports his contention that plaintiff was not as limited as she argues. The ALJ, however, does not show in the record where plaintiff could lift, stand or sit that is required for sedentary work, resting on the conclusion that plaintiff had normal gait, strength, and tone (e.g., [R. 20]). The residual functional capacity assessment only factored in mild carpel tunnel syndrome [R. 20] and, in a limited manner, her obesity [R. 20].

The ALJ also reasoned that nurse practitioner's opinions (and plaintiff's own testimony) could be discounted because of plaintiff's care of her nine-year-old son [R. 19, 20] without any record of the extent of plaintiff's parental care. The citations the ALJ relies upon for plaintiff's parental care merely state that plaintiff resided with two children [R. 277] without stating who provided childcare. The ALJ thus discounted plaintiff's treating sources as to her anxiety and panic attacks based upon her ability to care for her young son; this fact was insufficiently developed in this record. The ALJ thus erred in relying upon it without an adequate evidentiary

12

basis.  This matter should be **remanded** to identify who provides childcare and what extent plaintiff requires help in providing that care.

Plaintiff's motion (Docket No. 12) for judgment is **granted**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 12) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 13) for judgment on the pleadings is **denied.** Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).   The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 25, 2019